**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF RHODE ISLAND**

**RICHARD SOSTRE,**
**Plaintiff**

**v.**

**ANTHONY RYAN LESLIE, individually and in his official capacity, BAD BOY ENTERTAINMENT, INC. WARNER MUSIC GROUP CORP., UNIVERSAL MUSIC GROUP, INC., CASABLANCA RECORDS, THE MOTTOLA COMPANY, INC., CHAMPION ENTERTAINMENT GROUP, INC., NEXTSELECTION, INC. d/b/a NEXTSELECTION LIFESTYLE GROUP, NEXTSELECTION MUSIC PUBLISHING, INC., ED WOODS, individually and in his official capacity, GWEN NILES, individually and in her official capacity, THOMAS MOTTOLA, individually and in his official capacity, and SEAN COMBS, individually and in his official capacity,**
**Defendants**

**C.A. No. 07-289ML**

**PLAINTIFF'S OBJECTION TO DEFENDANTS' GWEN NILES, SEAN COMBS, BAD BOY ENTERTAINMENT, INC. AND WARNER MUSIC GROUP CORP.'S MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION**

Now comes the Plaintiff, Richard Sostre, in the above-cited matter and does hereby object to Defendants Gwen Niles, Sean Combs, Bad Boy Entertainment, Inc. and Warner Music Group Corp.'s Motion To Dismiss and as grounds therefore and in support thereof relies on his Memorandum of Law filed simultaneously herewith.

**WHEREFORE**, the Plaintiff respectfully prays that Defendants Gwen Niles, Sean Combs, Bad Boy Entertainment, Inc. and Warner Music Group Corp.'s Motion To Dismiss be denied.

Respectfully submitted,
PLAINTIFF,
By his attorney,

October 16, 2007

/s/ Louise A. Herman

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF RHODE ISLAND**

| | | |
|---|---|---|
| **RICHARD SOSTRE,** | : | |
| **Plaintiff** | : | |
| | : | |
| **v.** | : | |
| | : | |
| **ANTHONY RYAN LESLIE, individually** | : | |
| **and in his official capacity,** | : | |
| **BAD BOY ENTERTAINMENT, INC.,** | : | |
| **WARNER MUSIC GROUP CORP.,** | : | |
| **UNIVERSAL MUSIC GROUP, INC.,** | : | **C.A. No. 07-289ML** |
| **CASABLANCA RECORDS,** | : | |
| **THE MOTTOLA COMPANY, INC.,** | : | |
| **CHAMPION ENTERTAINMENT GROUP, INC.,** | : | |
| **NEXTSELECTION, INC. d/b/a** | : | |
| **NEXTSELECTION LIFESTYLE GROUP,** | : | |
| **NEXTSELECTION MUSIC PUBLISHING, INC.,** | : | |
| **ED WOODS, individually and in his official capacity,** | : | |
| **GWEN NILES, individually and in her official capacity,** | : | |
| **THOMAS MOTTOLA, individually and in his** | : | |
| **official capacity, and SEAN COMBS, individually and** | : | |
| **in his official capacity,** | : | |
| **Defendants** | : | |

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S OBJECTION TO DEFENDANTS' GWEN NILES, SEAN COMBS, BAD BOY ENTERTAINMENT, INC. AND WARNER MUSIC GROUP CORP.'S MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION**

## I. Introductory Statement

This is an action brought by the Plaintiff, Richard Sostre, seeking damages against the Defendants for breach of contract, breach of the covenant of good faith and fair dealing and tortious interference with Plaintiff's advantageous business relations. Plaintiff's Complaint was filed in Rhode Island Superior Court, Newport County, on June 11, 2007. On August 3, 2007,

the action was removed to this Court based upon diversity jurisdiction. On September 19, 2007, Defendants Universal Music Group, Inc. and Casablanca Records filed answers to the complaint. On August 3, 2007, Defendants Gwen Niles ("Niles"), Sean Combs ("Combs"), Bad Boy Entertainment, Inc. ("BBE") and Warner Music Group Corp. ("WMG") (herein collectively referred to as the "Bad Boy Defendants") moved to dismiss Plaintiff's Complaint, pursuant to Fed. R. Civ. P. 12(b)(2), on the grounds that this Court lacks personal jurisdiction over them. Plaintiff objects to Defendants' motion and requests that Defendants' Motion to Dismiss for Lack of Personal Jurisdiction be denied.

## II. Material Facts

The Plaintiff, Richard Sostre, resides in Newport, Rhode Island, where he is employed in the music management business. *See,* Complaint, Exhibit A, at ¶¶19 and 20. On or about September 1, 2000, Plaintiff and Defendant Ryan Leslie ("Leslie") entered into a written Personal Management Agreement ("Agreement"). *Id.* at 21. In accordance with the terms of the Agreement, Plaintiff was to serve as Defendant Leslie's sole and exclusive manager, representative and advisor, throughout the world, with respect to all of Defendant Leslie's activities in the Entertainment Industry. *Id.* at 22. The Agreement consisted of an initial three (3) year term, referred to therein as the "First Contract Period" and further provided that, if Defendant Leslie did not entered into a Term Producer Agreement with a major record company within one (1) year after September 1, 2000, the underlying Agreement would terminate on September 1, 2001. *Id.* at 26. On or about March 30, 2001, within the one (1) year contingent period, Defendant Leslie did enter into a Term Producer Agreement with Interscope Records, a

major record company as defined in the Agreement. *Id.* at 27. In accordance with the terms of the Agreement, the contract was extended for another three-years, to August 31, 2006. In addition, following the expiration of the six-year period, Plaintiff was to be paid commissions for an additional five years, i.e. September 1, 2006 to September 1, 2011. *Id.* at 30. Plaintiff successfully performed his obligations under the contract. *Id.* at 24. *See*, Exhibit B. Nevertheless, Defendant Leslie failed to comply with numerous material terms contained in the Agreement, including but not limited to: (1) by failing to pay Plaintiff commissions due and owing and (2) by engaging the other named Defendants as his managers. *Id.* at 35-42; *See*, Exhibit B; *See*, Exhibit C, D. The Agreement provides that any action involving any controversy regarding the Agreement must be brought in the courts located in the State of Rhode Island and not elsewhere. *Id.* at 21.

The Bad Boy Defendants knew or should have known of the existence of Plaintiff's contractual relationship with Defendant Leslie. *Id.* at 45. Nevertheless, during the term of said contractual relationship and in breach of said contractual relationship, the Bad Boy Defendants served as managers for Defendant Leslie and/or Defendant Leslie's controlling entities and undertook management functions exclusively and expressly designated to Plaintiff in the Agreement. *Id.* at 46, 48; *See*, Exhibit B; *See*, Exhibits C, D.

## **III. Argument**

The Bad Boy Defendants ask this Court to dismiss the Plaintiff's Complaint against them for lack of personal jurisdiction. For the limited purpose of a Motion to Dismiss for lack of personal jurisdiction under Rule 12(b)(2) of the Federal Rules of Civil Procedure, the Court must

take the facts alleged by the plaintiff as true, whether or not disputed, and construe them in the light most congenial to the plaintiff's jurisdictional claim. *Mass. Sch. Of Law at Andover, Inc. v. Am. Bar Ass'n*, 142 F.3d 26, 34 (1st Cir. 1998). The Courts in this circuit use the *prima facie* standard to determine whether personal jurisdiction is appropriate. *Rodriguez v. Fullerton Tires Corp.*, 115 F.3d 81, 83 (1st Cir. 1997). To establish personal jurisdiction, the Plaintiff must show that the forum state has a long-arm statute that purports to grant jurisdiction over the defendants and that exercising jurisdiction comports with the due process requirements of the Fourteenth Amendment to the U.S. Constitution. Because the Rhode Island long-arm statute claims jurisdiction to the maximum extent permitted by the Fourteenth Amendment, the issue concerns whether asserting personal jurisdiction over the Bad Boy Defendants is consistent with the Due Process Clause.

There are two types of personal jurisdiction: general and specific. For the reasons set forth below, the Plaintiff's claims against the Bad Boy Defendants are appropriately before this Court on either basis.

**THE BAD BOY DEFENDANTS' MOTION TO DISMISS SHOULD BE DENIED BECAUSE THE COURT MAY EXERCISE SPECIFIC JURISDICTION OVER THEM.**

Where specific jurisdiction is asserted, the Court employs a three-pronged standard in conducting the minimum contacts analysis. *Women & Infants Hosp. v. Cmty. Health Network of Conn. Inc.*, 394 F.Supp.2d 488, 491 (D.R.I. 2005). First, the claim underlying the litigation must directly arise out of or relate to, the defendant's forum state activities." *United Elec., Radio & Machin. Workers v. 163 Pleasant St. Corp.*, 960 F.2d 1080, 1089 (1st Cir. 1992). *See, Brian Jackson Company, v. Eximias Pharmaceutical Corp.*, 248 F.Supp.2d 31 (D.R.I. 2003). Second, "the defendant's in state contacts must represent a purposeful availment of the privileges in the

forum state, thereby invoking the benefits and protections of that state's laws and making the defendant's involuntary presence before the state's courts' foreseeable." *Women & Infants Hosp.* at 491. Third, the exercise of jurisdiction must be reasonable. *Id.*

a. <u>Relatedness</u>

The "relatedness" inquiry is a "flexible, relaxed standard." *Id.* [quoting N. Laminate Sales, Inc., 403 F.3d 14 (1st Cir. 2005)]. "[A] defendant need not be physically present in the forum state to cause injury (and thus 'activity' for jurisdictional purposes) in the forum state." *Id.* (citing *Calder v. Jones*, 465 U.S. 783, 789; 79 L.Ed. 2d 804; 104 S. Ct. 1482 (1984) (finding jurisdiction over petitioners proper in California based upon the "effects" of their Florida conduct in California)." *N. Laminate Sales, Inc., supra* at 25. In fact, [n]umerous courts have upheld a court's exercise of personal jurisdiction over non-resident defendants with no direct contact with the forum when the intentional tort was individually targeted at the resident of the forum state, and the brunt of the harm was felt there. *Levin and Levin v. Harned et al.*, 304 F.Supp.2d 136, 148 (D.Mass. 2003). Where, as here, the injury in the forum state arises out of or relates to the tortious activity that occurred out of state, the "relatedness" requirement is satisfied. *See, Id.*; *Nowak, et al. v. Tak How Investments, Ltd.*, 94 F.3d 708 (1st Cir. 1996).

In this case, at all relevant times, Plaintiff lived and continues to live in Rhode Island. Plaintiff's music management business is located in Rhode Island and he primarily manages Rhode Island/New England artists. *See*, Exhibit B. Plaintiff has suffered and continues to suffer significant economic injury and other harm due to the Bad Boy Defendants' intentional tortious conduct. The harm Plaintiff has suffered is clearly felt in Rhode Island. Thus, Defendants' conduct satisfies the "relatedness" prong.

b. <u>Purposeful Availment</u>

The focus of the second prong of the analysis, the "purposeful availment" requirement, is on "voluntariness and foreseeability." *Women & Infants,* supra at 492 (quoting N. Laminate Sales, Inc., 403 F.3d 14). The Supreme Court has recognized that "as technological progress has increased the flow of commerce between states, the need for jurisdiction has undergone a similar increase." *Hanson v. Denckla*, 357 U.S. 235 (1958). Again, the defendants need not be physically present in the forum state. In the case of intentional torts, where a party's knowledge that his intentional conduct will cause injury and that the major impact of that injury will occur within the forum, such knowledge constitutes a purposeful contact or a substantial connection such that the intentional tortfeasor could reasonably expect to be hailed into the forum State's courts to defend his actions. *See, e.g. Hugel v. McNell*, 886 F.2d 1, 4 (1st Cir. 1989).

The Bad Boy Defendants were aware or should have been aware that Plaintiff was employed as Defendant Leslie's exclusive manager and were aware or should have been aware that, at all relevant times, Plaintiff resides in Rhode Island and operates his management business in Rhode Island.

Defendant Combs is the CEO of BBE. *See*, Combs Affidavit attached to Defendants' Motion to Dismiss. On information and belief, BBE is owned by Defendant WMG. *See*, Exhibit E. At all relevant times, Defendant Niles was and continues to be an agent of BBE.[1] As described below, when Defendant Niles interfered with Plaintiff's management contract with Defendant Leslie, Defendant Niles knew that Defendant Leslie was managed by Plaintiff and

---

[1] Defendants allege that Defendant Niles is employed by Bad Boy Records. On information and belief, Bad Boy Records was formerly Bad Boy Entertainment. See Exhibit E (from Wikipedia). To the extent that Plaintiff has erroneously named Bad Boy Entertainment as the proper party, Plaintiff will amend his Complaint to substitute Bad Boy Records as the properly named party.

knew that Plaintiff lived and worked in Rhode Island. As an agent of BBE, Defendant Niles' conduct is imputed to Defendant Combs, Defendant BBE and Defendant WMG. "For the purposes of personal jurisdiction, the actions of an agent may be attributed to the principal." *Daynard v. Ness, Motley, Loadholt, Richardson & Poole, P.A. et al.*, 270 F.3d 42, 55 (1st Cir. 2002). As such, the Bad Boy Defendants knew or should have known of Plaintiff's management contract with Defendant Leslie and Plaintiff's ties to Rhode Island. See, Exhibit B.

As Defendant Leslie's manager, Plaintiff accompanied Defendant Leslie at numerous music industry events where Defendants were present and Plaintiff made it clear to Defendants that he served as Defendant Leslie's manager. *See*, Exhibit B. For example, in 2001, Plaintiff accompanied Defendant Leslie at the *Teen People Magazine* music contest ("Music Contest") in Harlem, New York, which was also attended by Defendant Niles. Defendant Niles represented to Plaintiff and Defendant Leslie that she was previously employed by Bad Boy Entertainment ("BBE"). *See*, Exhibit B and Niles Affidavit. At the Music Contest and at various other times, Plaintiff made it clear to Defendant Niles that he served as Defendant Leslie's exclusive manager. In fact, at the Music Contest, Defendant Niles expressed an interest in managing Defendant Leslie, despite the fact that she was aware that Plaintiff managed Defendant Leslie. *See*, Exhibit B. Furthermore, on other occasions, as Defendant Leslie's manager, Plaintiff spoke to Defendant Niles in an effort to arrange for production and publishing deals for Defendant Leslie. *See*, Exhibit B. In addition, when Plaintiff accompanied Defendant Leslie to Los Angeles in 2002, Defendant Niles met with Defendant Leslie in an effort to assume a managerial role. See Exhibit B.

Further, at all times, Defendant Niles knew that Plaintiff was from Rhode Island and that his management business was located in Rhode Island. *See*, Exhibit B. Nevertheless, she continued to pursue Defendant Leslie in an effort to serve as his manager, and beginning in or about 2002 and continuing to present, Defendant Niles has served and continues to serve as Defendant Leslie's manager. *See,* Exhibit B; See, Exhibit C Defendant Niles was re-employed by BBE in or about 2003 and is currently employed by BBE. See, Exhibit B and Niles Affidavit.

Apart from Defendant Niles interference with the exclusive management contract between Plaintiff and Defendant Leslie, which is imputed to the other Bad Boy Defendants, on information and belief, Defendants Combs, BBE and WMG have also interfered directly with Plaintiff's contract with Defendant Leslie. As stated on Defendant Leslie's own web site, "RyanLeslie.com", Defendant Leslie has and continues to represent that all the Bad Boy Defendants serve as his managers.[2] See Exhibit C. For the above stated reasons, Defendants' conduct satisfies the "purposeful availment" prong.

c. Reasonableness

The third prong of the specific jurisdiction analysis requires that the Court's exercise of jurisdiction be reasonable.

> "The Supreme Court has identified a set of 'gestalt' factors to be considered in assessing reasonableness. These factors include: the burden on the defendant in appearing; the forum state's interest in adjudicating the matter: the plaintiff's interest in obtaining convenient and effective relief; the interstate judicial system's interest in obtaining the most efficient resolution of the controversy; and the shared interest of the several states in furthering fundamental substantive social polices."

Women & Infants, *supra,* at 492.

[2] Contrary to Defendants' contention, Defendant Leslie's web site identifies that he is managed by "Bad Boy Entertainment"

First, the inconvenience to defendants must be so severe as to overcome the deference due the Plaintiff's selection of forum. "[F]or this factor to be significant, the defendant must demonstrate that exercise of jurisdiction in the present circumstances is onerous in a special, unusual, or other constitutionally significant way." *Nowak v. Tak How Investments, Ltd.*, 94 F.3d 708 at 718 (1st Cir. 1996). Second, Rhode Island has a substantial interest in providing a forum for its resident to resolve his claims. Further, "[t]he forum state has a demonstrable interest in exercising jurisdiction over one who causes injury within it borders." *Ticketmaster-NewYork, Inc.*, 26 F.3d 201, 211 (1st Cir. 1994). Third, the courts routinely accord deference to the Plaintiff's choice of forum. Foster-Miller, 46 F.3d 138,151 (1st Cir. 1995). Fourth, the efficient administration or justice also favors Rhode Island, since the underlying breach of contract action is proceeding in this court. Finally, Rhode Island has an interest in protecting its citizens from out of state providers of goods and services, from injuries caused in its borders by out of state tortfeasers and affording its citizens a convenient forum in which to bring their claims. *Nowak, supra* at 719.

The equities involved demonstrate that the just and efficient resolution of this matter must occur in this forum.

**THE BAD BOY DEFENDANTS' MOTION MUST BE DENIED BECAUSE THIS COURT MAY EXERCISE GENERAL JURISDICTION OVER DEFENDANTS.**

When a defendant's contacts with a state are continuous, purposeful and systematic, a nonresident defendant will subject himself to the general jurisdiction of that forum's courts with respect to all claims regardless of whether they relate to or arise out of the nonresident's contacts with the forum. *Rose v. Firstar Bank*, 819 A.2d 1247, 1250 (R.I. 2003). Thus, if a nonresident's contacts with a forum are sufficient for general personal jurisdiction to exist, then such a party

may be sued in that forum for "causes of action arising from dealings entirely distinct from those activities." *Cerberus Partners, L.P. v. Gadsby & Hannah, LLP*, 836 A.2d at 1118 (R.I. 2003).

In general jurisdiction cases, the Supreme Court has utilized the "gestalt factors" described above in "...assessing the overall reasonableness of an exercise of personal jurisdiction. *See, Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 476-77. In close cases, those criteria – which we have termed the 'gestalt factors'...'may tip the constitutional balance'...*Burger King*, 471 U.S. at 477 (explaining that gestalt factors 'sometimes serve to establish the reasonableness of jurisdiction upon a lesser showing of minimum contacts than would otherwise be required')." *United States of America v. Swiss American Bank, LTD., et al.*, 274 F.3d 610, 634 (1st Cir. 2001). The "gestalt factors" are described above and as discussed above, clearly favor the Court's exercise of personal jurisdiction over the Bad Boy Defendants.

In addition, "as technological progress has increased the flow of commerce between the States, the need for jurisdiction has undergone a similar increase." *Hanson v. Denckla, supra* at 250-251. Courts have frequently recognized that the interactive nature of the internet can form a basis for personal jurisdiction, particularly where the defendant has engaged in other conduct in the forum state. "[T]he likelihood that personal jurisdiction can be constitutionally exercised is directly proportionate to the nature and quality of commercial activity that an entity conducts over the Internet." *Zippo Mfg. Co. v. Zippo Dot Com, Inc.*, 952 F.Supp.119, 1124 (W.D.Pa. 1997). "If the defendant enters into contacts with residents of a foreign jurisdiction that involve the knowing and repeated transmission of computer files over the Internet, personal jurisdiction is proper." *Id.*

The exercise of jurisdiction over the Bad Boy Defendants is proper, insofar as they derive revenue from record, digital media, merchandise and CD sales in the Rhode Island market, their products are sold to Rhode Island consumers at many Rhode Island stores, they advertise their products in Rhode Island, they ship products to Rhode Island, they promote their artists in Rhode Island, and they derive a monetary benefit from broadcasting in Rhode Island and concerts that take place in Rhode Island. See Exhibit F, (website of local radio station where the music of artists managed by Bad Boy are played, for example: Yung Joc, Gorilla Zoe, and Sean Combs aka Diddy), *See also*, Exhibit G, (websites from local music stores where the albums of artists managed by Bad Boy are advertised for purchase), *See also* Exhibit H, (website of the Dunkin' Donuts Center, a Rhode Island concert venue where artists managed by Bad Boy have performed, including Danity Kane). In addition, the Bad Boy Defendants maintain commercial websites to sell their products to the Rhode Island market. See Exhibit I. In order to ascertain the amount of revenue generated by the Bad Boy Defendants and the amount of sales conducted in Rhode Island, Plaintiff will need to engage in jurisdictional discovery.

The activities, however, of the Bad Boy Defendants demonstrate that they are subject to the general jurisdiction of the Court.

## VI. Conclusion

For all the foregoing reasons, Plaintiff asks this court to find that it may exercise jurisdiction over the Bad Boy Defendants in this matter. Alternatively, Plaintiff requests that he be permitted sixty (60) days in which to engage in jurisdictional discovery and that the Court postpone its ruling on Defendants' motion in order that Plaintiff may undertake such limited discovery.

PLAINTIFF,
By his attorney,

/s/ Louise A. Herman

Dated: October 16, 2007

**CERTIFICATION**

I hereby certify that this document has been filed electronically on this 16th day of October, 2007, an is available for viewing and downloading to the ECF registered counsel of record:

Via Electronic Service/ECF:

Virgil Roberts, Esq.
6100 Center Drive, Suite 910
Los Angeles, CA 90045

Jonathan Davis, Esq.
99 Park Ave., Suite 1600
New York, NY 10016

Martha Holt, Esq.
Edwards Angell Palmer & Dodge LLP
2800 Financial Plaza
Providence, RI 02903

Elaine Johnson James, Esq.
One North Clematis Street
Suite 400
West Palm Beach, FL 33401

J. Scott Kilpatrick, Esq.
Chisolm Chisolm & Kilpatrick LLP
One Turks Head Place, St. 1313
Providence, RI 02903

L. Peter Parcher, Esq.
Kimo Peluso, Esq.
7 Times Square
New York, NY 10036

/s/ Louise A. Herman, Esq.

# TABLE OF AUTHORITIES

**Page**

## CASES

Brian Jackson Company v. Eximias Pharmaceutical Corp.,
248 F.Supp. 2d 31 (D.R.I. 2003)....4

Burger King Corp. v. Rudcewicz
471 U.S. 462....9

Calder v. Jones,
465 U.S. 783, L.Ed. 2d 804, 104 S.Ct. 1482 (1984)....5

Cerberus Partners, L.P. v. Gadsby & Hannah, LLP,
836 A.2d 1113 (R.I. 2003)....9

Daynard v. Ness, Motley, Loadholt, Richardson & Poole, P.A. et al.,
270 F.3d 42 (1st Cir. 2002)....6

Foster-Miller, Inc. v. Babcock & Wilcox Canada,
46 F.3d 138 (1st Cir. 1995)....8

Hanson v. Denckla,
357 U.S. 235 (1958)....6

Hugel v. McNell,
886 F.2d 1 (1st Cir. 1989)....6

Levin and Levin v. Harned, et al.,
304 F.Supp. 2d 136, ....5

Mass. School of Law at Andover, Inc., v. American Bar Ass'n.,
142 F.3d 26, (1st Cir. 1998)....4

Northern Laminate Sales, Inc
403 F.3d 14 (1st Cir. 2005)....5

Nowak v. Tak How Investments, Ltd.,
94 F.3d 708 (1st Cir. 1996)....5

Rodriguez v. Fullerton Tires Corp.,
115 F.3d 81, (1st Cir. 1997)....4

Rose v. Firstar Bank,
819 A.2d 1247 (R.I. 2003)....9

**CASES (cont.)**

**Page**

Ticketmaster-New York, Inc. v. Alioto,
26F.3d 201 (1st Cir. 1994)........................................8

United Elec., Radio & Machin. Workers v. 163 Pleasant St. Corp.,
960 F.2d 1080, (1st Cir. 1992)....................................4

United States of America v. Swiss American Bank LTD, et al
274 F.3d 610 (1st Cir. 2001).......................................9

Women & Infants Hospital v. Cmty Health Network of Conn. Inc.,
394 F.Supp 2d 488, (D.R.I. 2005)................................4

Zippo Mfg. Co. v. Zippo Dot Com, Inc.,
952 F.Supp. 119 (W.D. Pa. 1997).................................9