**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF RHODE ISLAND**

| | | |
|---|---|---|
| **RICHARD SOSTRE,**<br>**Plaintiff**<br><br>**v.**<br><br>**ANTHONY RYAN LESLIE, individually and in his official capacity,**<br>**BAD BOY ENTERTAINMENT, INC.**<br>**WARNER MUSIC GROUP CORP.,**<br>**UNIVERSAL MUSIC GROUP, INC.,**<br>**CASABLANCA RECORDS,**<br>**THE MOTTOLA COMPANY, INC.,**<br>**CHAMPION ENTERTAINMENT GROUP, INC.,**<br>**NEXTSELECTION, INC. d/b/a**<br>**NEXTSELECTION LIFESTYLE GROUP,**<br>**NEXTSELECTION MUSIC PUBLISHING, INC.,**<br>**ED WOODS, individually and in his official capacity,**<br>**GWEN NILES, individually and in her official capacity,**<br>**THOMAS MOTTOLA, individually and in his official capacity, and SEAN COMBS, individually and in his official capacity,**<br>**Defendants** | : | **C.A. No. 07-289ML** |

**PLAINTIFF'S OBJECTION TO DEFENDANTS' THOMAS MOTTOLA, THE MOTTOLA COMPANY, INC. AND CHAMPION ENTERTAINMENT GROUP, INC.'S MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION**

Now comes the Plaintiff, Richard Sostre, in the above-cited matter and does hereby object to Defendants Thomas Mottola, The Mottola Company, Inc.'s and Champion Entertainment, Inc's. Motion To Dismiss and as grounds therefore and in support thereof relies on his Memorandum of Law filed simultaneously herewith.

**WHEREFORE**, the Plaintiff respectfully prays that Defendants Thomas Mottola, The Mottola Company, Inc. and Champion Entertainment, Inc's Motion To Dismiss be denied.

Respectfully submitted,
PLAINTIFF,
By his attorney,

October 16, 2007

<u>/s/ Louise A. Herman</u>

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF RHODE ISLAND**

| | | |
|---|---|---|
| **RICHARD SOSTRE,**<br>**Plaintiff**<br><br>**v.**<br><br>**ANTHONY RYAN LESLIE, individually and in his official capacity, BAD BOY ENTERTAINMENT, INC., WARNER MUSIC GROUP CORP., UNIVERSAL MUSIC GROUP, INC., CASABLANCA RECORDS, THE MOTTOLA COMPANY, INC., CHAMPION ENTERTAINMENT GROUP, INC., NEXTSELECTION, INC. d/b/a NEXTSELECTION LIFESTYLE GROUP, NEXTSELECTION MUSIC PUBLISHING, INC., ED WOODS, individually and in his official capacity, GWEN NILES, individually and in her official capacity, THOMAS MOTTOLA, individually and in his official capacity, and SEAN COMBS, individually and in his official capacity,**<br>**Defendants** | : | **C.A. No. 07-289ML** |

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S OBJECTION TO DEFENDANTS' THOMAS MOTOLLA, THE MOTOLLA COMPANY, INC. AND CHAMPION ENTERTAINMENT GROUP, INC. S MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION**

## I. Introductory Statement

This is an action brought by the Plaintiff, Richard Sostre, seeking damages against the Defendants for breach of contract, breach of the covenant of good faith and fair dealing and tortious interference with Plaintiff's advantageous business relations. Plaintiff's Complaint was filed in Rhode Island Superior Court, Newport County on June 11, 2007. On August 3, 2007, the action was removed to this Court based upon diversity jurisdiction. On September 19, 2007, Defendants Universal Music Group. Inc. and Casablanca Records filed answers to the complaint.

On August 3, 2007, Defendants Thomas Motolla ("Motolla"), The Motolla Company, Inc. ("Motolla Company") and Champion Entertainment Group, Inc. ("Champion") (herein collectively referred to as the "Motolla Defendants") moved to dismiss Plaintiff's Complaint, pursuant to Fed. R. Civ. P. 12(b)(2), on the grounds that this Court lacks personal jurisdiction over them. Plaintiff objects to the Mottola Defendants' motion and requests that Defendants' Motion to Dismiss for Lack of Personal Jurisdiction be denied.

## II. <u>Material Facts</u>

The Plaintiff, Richard Sostre, resides in Newport, Rhode Island, where he is employed in the music management business. *See*, Complaint, Exhibit A, at ¶¶19 and 20. On or about September 1, 2000, Plaintiff and Defendant Ryan Leslie ("Leslie") entered into a written Personal Management Agreement ("Agreement"). *Id.* at 21. In accordance with the terms of the Agreement, Plaintiff was to serve as Defendant Leslie's sole and exclusive manager, representative and advisor, throughout the world, with respect to all of Defendant Leslie's activities in the Entertainment Industry. *Id.* at 22. The Agreement consisted of an initial three (3) year term, referred to therein as the "First Contract Period" and further provided that, if Defendant Leslie has not entered into a term producer agreement with a major record company within one (1) year after September 1, 2000, the Agreement would automatically terminate on September 1, 2001. *Id.* at 26. On or about March 30, 2001, Defendant Leslie did enter into a term producer agreement with Interscope Records, a major record company as defined in the Agreement. *Id* at 27. In accordance with the terms of the Agreement, the contract was extended for another three years, to August 31, 2006. In addition, following the expiration of the six-year period, Plaintiff was to be paid commissions for an additional five years, i.e. from September 1,

2006 to September 1, 2011. *Id.* at 30. Plaintiff successfully performed his obligations under the contract. *Id.* at 24; *See*, Exhibit B. Nevertheless, Defendant Leslie failed to comply with many material terms contained therein, including but not limited to: (1) by failing to pay Plaintiff commissions due and (2) by engaging the named Defendants as his managers. *Id.* at 35-42; *See*, Exhibit B; *See*, Exhibits C, D. The Agreement provides that any action involving any controversy regarding the Agreement must be brought in the courts located in the State of Rhode Island and not elsewhere. *Id.* at 21.

The Mottola Defendants knew or should have known of the existence of the Plaintiff's contractual relationship with Defendant Leslie. *Id.* at 45. Nevertheless, during the term of said contractual relationship and in breach of said contractual relationship, the Mottola Defendants served as managers for Defendant Leslie and/or Defendant Leslie's controlling entities and undertook management functions exclusively and expressly designated to Plaintiff in the Agreement. *Id.* at 46 and 48; *See*, Exhibit B; *See*, Exhibits C, D.

## **III. Argument**

The Mottola Defendants ask this Court to dismiss the Plaintiff's Complaint against them for lack of personal jurisdiction. For the limited purpose of a Motion to Dismiss for lack of personal jurisdiction under Rule 12(b)(2) of the Federal Rules of Civil Procedure, the Court must take the facts alleged by the plaintiff as true, whether or not disputed, and construe them in the light most congenial to the plaintiff's jurisdictional claim. *Mass. Sch. Of Law at Andover, Inc. v. Am. Bar Ass'n*, 142 F.3d 26, 34 (1st Cir. 1998). The Courts in this circuit use the *prima facie* standard to determine whether personal jurisdiction is appropriate. *Rodriguez v. Fullerton Tires Corp.*, 115 F.3d 81, 83 (1sty Cir. 1997). To establish personal jurisdiction, the Plaintiff must

show that the forum state has a long-arm stature that purports to grant jurisdiction over the defendants and that exercising jurisdiction comports with the due process requirements of the Fourteenth Amendment to the U.S. Constitution. Because the Rhode Island long-arm statute claims jurisdiction to the maximum extent permitted by the Fourteenth Amendment, the issue concerns whether asserting personal jurisdiction over the Mottolla Defendants is consistent with the Due Process Clause.

There are two types of personal jurisdiction: general and specific. For the reasons set forth below, the Plaintiff's claims against the Mottola Defendants are appropriately before this Court on either basis.

**THE MOTTOLA DEFENDANTS' MOTION TO DISMISS SHOULD BE DENIED BECAUSE THE COURT MAY EXERCISE SPECIFIC JURISDICTION OVER THEM.**

Where specific jurisdiction is asserted, the Court employs a three-pronged standard in conducting the minimum contacts analysis. *Women & Infants Hosp. v. Cmty. Health Network of Conn. Inc.*, 394 F.Supp.2d 488, 491 (D.R.I. 2005). First, the claim underlying the litigation must directly arise out of or relate to, the defendant's forum state activities." *United Elec., Radio & Machin. Workers v. 163 Pleasant St. Corp.*, 960 F.2d 1080, 1089 (1st Cir. 1992). *See, Brian Jackson Company, v. Eximias Pharmaceutical Corp.*, 248 F.Supp. 2d 31 (D.R.I. 2003). Second, "the defendant's in state contacts must represent a purposeful availment of the privileges in the forum state, thereby invoking the benefits and protections of that state's laws and making the defendant's involuntary presence before the state's courts' foreseeable." *Women & Infants Hosp.* at 491. Third, the exercise of jurisdiction must be reasonable. *Id.*

a. Relatedness

The "relatedness" inquiry is a "flexible, relaxed standard." *Id.* [quoting *N. Laminate Sales, Inc.,* 403 F.3d 14 (1st Cir. 2005)]. "[A] defendant need not be physically present in the forum state to cause injury (and thus 'activity' for jurisdictional purposes) in the forum state." *Id.* (citing *Calder v. Jones*, 465 U.S. 783, 789; 79 L.Ed. 2d 804; 104 S. Ct. 1482 (1984) (finding jurisdiction over petitioners proper in California based upon the "effects" of their Florida conduct in California)." *N. Laminate Sales, Inc., supra* at 25. In fact, [n]umerous courts have upheld a court's exercise of personal jurisdiction over non-resident defendants with no direct contact with the forum when the intentional tort was individually targeted at the resident of the forum state, and the brunt of the harm was felt there. *Levin and Levin v. Harned et al.*, 304 F.Supp.2d 136, 148 (D.Mass. 2003). Where, as here, the injury in the forum state arises out of or relates to the tortious activity that occurred out of state, the "relatedness" requirement is satisfied. *See, Id.*; *Nowak, et al. v. Tak How Investments, Ltd.*, 94 F.3d 708 (1st Cir. 1996).

In this case, Plaintiff lives in Rhode Island, conducts his music management business in Rhode Island and primarily serves Rhode Island/ New England artists. *See*, Exhibit B. Plaintiff has suffered and continues to suffer significant economic injury and other harm due to Defendants' intentional tortious conduct. The harm Plaintiff has suffered is clearly felt in Rhode Island. Thus, the Mottola Defendants' conduct satisfies the "relatedness" prong.

b. Purposeful Availment

The focus of the second prong of the analysis, the "purposeful availment" requirement, is on "voluntariness and foreseeability." *Women & Infants*, supra at 492 [quoting *N. Laminate Sales, Inc.*, 403 F.3d 14]. The Supreme Court has recognized that "as technological progress has

increased the flow of commerce between states, the need for jurisdiction has undergone a similar increase." *Hanson v. Denckla*, 357 U.S. 235 (1958). Again, the defendants need not be physically present in the forum state. In the case of intentional conduct, [t]he knowledge that the major impact of the injury would be felt in the forum State constitutes a purposeful contact or substantial connection whereby the intentional tortfeasor could reasonably expect to be haled into the forum State's courts to defend his actions." *Hugel v. McNell*, 886 F.2d 1, 4 (1st Cir. 1989).

The Mottola Defendants knew or should have known that (1) Plaintiff served as Defendant Leslie's exclusive manager when they tortiously interfered with that relationship and (2) that Plaintiff was a Rhode Island resident and operated his management business in Rhode Island. During all relevant times, Plaintiff held himself out in the industry as Defendant Leslie's manager. As Defendant Leslie's manager, he attended music industry events and engaged in communications with the Mottola Defendants or agents of said Defendants. *See*, Exhibit B. For instance, in or about 2002, Plaintiff arranged for, and accompanied Defendant Leslie at meetings in Los Angeles with various executives in the music business. At that time, Defendant Leslie met with Defendant Ed Woods, who shortly thereafter served as an Executive Vice President at Defendant Casablanca, a record label owned by Defendant Thomas Mottola. *See*, Exhibits B, C, E, F. In the course of business dealings with Defendant Woods, Defendant Woods was informed that Plaintiff served as Defendant Leslie's exclusive manager and was also informed that Plaintiff lived and worked in Rhode Island. *See,* Exhibit B. In addition, Defendant Woods participated in the negotiation of the March, 2001 Production Agreement deal that Plaintiff had arranged for Defendant Leslie. *See,* Exhibit B. Defendant Woods clearly knew that Plaintiff

exclusively managed Defendant Leslie and was well aware of Plaintiff's Rhode Island ties. *See,* Exhibit B. As an agent of Casablanca Records, the knowledge and conduct of Defendant Ed Woods in interfering with the management agreement between Plaintiff and Defendant Leslie is imputed to the Mottola Defendants. Moreover, on information and belief, the Motolla Defendants have also managed Defendant Leslie since in or about 2002 or 2003 and continuing to present. In fact, as set forth on Defendant Leslie's web site, "RyanLeslie.com", Defendant Leslie has represented and continues to represent that the Mottola Defendants and have been employed and continue to be employed as his managers.[1] *See*, Exhibit D. "For the purposes of personal jurisdiction, the actions of an agent may be attributed to the principal." *Daynard v. Ness, Motley, Loadholt, Richardson & Poole, P.A. et al.*, 270 F.3d 42, 55 (1st Cir. 2002). As such, the Mottola Defendants knew or should have known of Plaintiff's exclusive management contract with Defendant Leslie and Plaintiff's ties to Rhode Island. Thus, the Mottola Defendants' conduct satisfies the "purposeful availment" prong.

c. <u>Reasonableness</u>

The third prong of the specific jurisdiction analysis requires that the Court's exercise of jurisdiction be reasonable.

> "The Supreme Court has identified a set of 'gestalt' factors to be considered in assessing reasonableness. These factors include: the burden on the defendant in appearing; the forum state's interest in adjudicating the matter: the plaintiff's interest in obtaining convenient and effective relief; the interstate judicial system's interest in obtaining the most efficient resolution of the controversy; and the shared interest of the several states in furthering fundamental substantive social polices."

*Women & Infants, supra* at 492.

[1] Contrary to Defendants' contention, Defendant Leslie's web site states that he is managed by "Casablanca Records/Champion Entertainment."

First, the inconvenience to defendants must be so severe as to overcome the deference due the Plaintiff's selection of forum. "[F]or this factor to be significant, the defendant must demonstrate that exercise of jurisdiction in the present circumstances is onerous in a special, unusual, or other constitutionally significant way." *Nowak v. Tak How Investments, Ltd.*, 94 F.3d 708 at 718 (1st Cir. 1996). Second, Rhode Island has a substantial interest in providing a forum for its resident to resolve his claims. Further, "[t]he forum state has a demonstrable interest in exercising jurisdiction over one who causes injury within its borders." *Ticketmaster-NewYork, Inc.*, 26 F.3d 201, 211 (1st Cir. 1994). Third, the courts routinely accord deference to the Plaintiff's choice of forum. *Foster-Miller, Inc., v. Babcock & Wilcox Canada*, 46 F.3d 138, 151 (1st Cir. 1995). Fourth, the efficient administration or justice also favors Rhode Island, since the underlying breach of contract action is proceeding in this court. Finally, Rhode Island has an interest in protecting its citizens from out of state providers of goods and services, from injuries caused in its borders by out of state tortfeasers and affording its citizens a convenient forum in which to bring their claims. *Nowak, supra* at 719.

The equities involved demonstrate that the just and efficient resolution of this matter must occur in this forum.

**THE MOTOLA DEFENDANTS' MOTION MUST BE DENIED BECAUSE THIS COURT MAY EXERCISE GENERAL JURISDICTION OVER THE MOTTOLA DEFENDANTS.**

When a defendant's contacts with a state are continuous, purposeful and systematic, a nonresident defendant will subject himself to the general jurisdiction of that forum's courts with respect to all claims regardless of whether they relate to or arise out of the nonresident's contacts with the forum. *Rose v. Firstar Bank*, 819 A.2d 1247, 1250 (R.I. 2003). Thus, if a nonresident's

contacts with a forum are sufficient for general personal jurisdiction to exist, then such a party may be sued in that forum for "causes of action arising from dealings entirely distinct from those activities." *Cerberus Partners, L.P. v. Gadsby & Hannah, LLP*, 836 A.2d at 1118 (R.I. 2003).

In general jurisdiction cases, the Supreme Court has utilized the "gestalt factors" described above in "...assessing the overall reasonableness of an exercise of personal jurisdiction. *See*, *Burger KingCorp. v. Rudzewicz*, 471 U.S. 462, 476-77. In close cases, those criteria – which we have termed the 'gestalt factors'...'may tip the constitutional balance'...*Burger King*, 471 U.S. at 477 (explaining that gestalt factors 'sometimes serve to establish the reasonableness of jurisdiction upon a lesser showing of minimum contacts than would otherwise be required')." *United States of America v. Swiss American Bank, LTD., et al.*, 274 F.3d 610, 634 (1st Cir. 2001). The "gestalt factors" are described above and as discussed above, clearly favor the Court's exercise of personal jurisdiction over the Mottola Defendants.

In addition, "as technological progress has increased the flow of commerce between the States, the need for jurisdiction has undergone a similar increase." *Hanson v. Denckla*, *supra* at 250-251. Courts have frequently recognized that the interactive nature of the internet can form a basis for personal jurisdiction, particularly where the defendant has engaged in other conduct in the forum state.. "[T]the likelihood that personal jurisdiction can be constitutionally exercised is directly proportionate to the nature and quality of commercial activity that an entity conducts over the Internet." *Zippo Mfg. Co. v. Zippo Dot Com, Inc.*, 952 F.Supp.119, 1124 (W.D.Pa. 1997). "If the defendant clearly conducts business over the internet and enters into contracts with residents of a foreign jurisdiction that involve the knowing and repeated transmission of computer files over the Internet, personal jurisdiction is proper." *Id.*

As set forth in the Affidavit of Thomas Mottola, Defendant Mottola met Defendant Leslie in 2003 and began working with him within months. *See*, Mottola Affidavit attached to Defendant's Motion to Dismiss. On information and belief, at the time that Defendant Mottola began serving as Defendant Leslie's manager, he owned Casablanca Records ("Casablanca") and was engaged in a joint venture with Defendant Universal Music Group ("UMG"). See, Exhibits E, F. Both Casablanca and UMG engaged and continue to engage in systematic and continuous business activity in Rhode Island, including record, CD and merchandise sales at Rhode Island retail outlets, record stores, etc. Presumably, they derive revenue from performances in Rhode Island by any artists signed to their labels, from broadcasts of their artists in Rhode Island, from digital media sold to Rhode Island consumers and from promoting and advertising their artists/labels in Rhode Island. *See,* Exhibit G, (websites of Rhode Island record stores reflecting the advertisement and saleof Casablanca artist's albums). *See also,* Exhibit H, (Casablanca Records website advertising Casablanca artist Lindsey Lohan's albums and songs available for purchase and/or downloading, as well as a page soliciting consumers for Casablanca's mailing list).

Furthermore, as music manager and music management companies, the Mottola Defendants are paid based upon the success of the artists they manage. *See,* Mottola Affidavit. As such, jurisdiction over the Mottola Defendants is proper insofar as the income they derive as managers is directly tied to the revenue their artists generate from Rhode Island record, CD and/or merchandise sales, performances in Rhode Island, broadcasting in Rhode Island, advertising in Rhode Island, ring tones and other products sold over the internet to Rhode Island, etc. However, in order to determine the amount of revenue generated by the Mottola Defendants

from their business activities in the State of Rhode Island, Plaintiff will need to engage in jurisdictional discovery.

In any event, the activities of the Mottola Defendants demonstrate that they are subject to the general jurisdiction of the Court and that the exercise of personal jurisdiction is reasonable.

## VI. Conclusion

For all the foregoing reasons, Plaintiff asks this court to find that it may exercise jurisdiction over the Mottola Defendants in this matter. Alternatively, Plaintiff requests that he be permitted sixty (60) days in which to engage in jurisdictional discovery and that the Court postpone its ruling on Defendants' motion in order that Plaintiff may undertake such limited discovery.

PLAINTIFF,
By his attorney,

/s/ Louise A. Herman

______________________________

Dated: October 16, 2007

## CERTIFICATION

I hereby certify that this document has been filed electronically on this 16th day of October, 2007, an is available for viewing and downloading to the ECF registered counsel of record:

Via Electronic Service/ECF:

Virgil Roberts, Esq.
6100 Center Drive, Suite 910

Jonathan Davis, Esq.
99 Park Ave., Suite 1600

Los Angeles, CA 90045

Martha Holt, Esq.
Edwards Angell Palmer & Dodge LLP
2800 Financial Plaza
Providence, RI 02903

J. Scott Kilpatrick, Esq.
Chisolm Chisolm & Kilpatrick LLP
One Turks Head Place, St. 1313
Providence, RI 02903

New York, NY 10016

Elaine Johnson James, Esq.
One North Clematis Street
Suite 400
West Palm Beach, FL 33401

L. Peter Parcher, Esq.
Kimo Peluso, Esq.
7 Times Square
New York, NY 10036

/s/ Louise A. Herman

## TABLE OF AUTHORITIES

**Page**

### CASES

Brian Jackson Company v. Eximias Pharmaceutical Corp.,
248 F.Supp. 2d 31 (D.R.I. 2003)....4

Burger King Corp. v. Rudcewicz
471 U.S. 462....9

Calder v. Jones,
465 U.S. 783, L.Ed. 2d 804, 104 S.Ct. 1482 (1984)....5

Cerberus Partners, L.P. v. Gadsby & Hannah, LLP,
836 A.2d 1113 (R.I. 2003)....9

Daynard v. Ness, Motley, Loadholt, Richardson & Poole, P.A. et al.,
270 F.3d 42 (1st Cir. 2002)....6

Foster-Miller, Inc. v. Babcock & Wilcox Canada,
46 F.3d 138 (1st Cir. 1995)....8

Hanson v. Denckla,
357 U.S. 235 (1958)....6

Hugel v. McNell,
886 F.2d 1 (1st Cir. 1989)....6

Levin and Levin v. Harned, et al.,
304 F.Supp. 2d 136, ....5

Mass. School of Law at Andover, Inc., v. American Bar Ass'n.,
142 F.3d 26, (1st Cir. 1998)....4

Northern Laminate Sales, Inc
403 F.3d 14 (1st Cir. 2005)....5

Nowak v. Tak How Investments, Ltd.,
94 F.3d 708 (1st Cir. 1996)....5

Rodriguez v. Fullerton Tires Corp.,
115 F.3d 81, (1st Cir. 1997)....4

Rose v. Firstar Bank,
819 A.2d 1247 (R.I. 2003)....9

**CASES (cont.)**


**Page**

Ticketmaster-New York, Inc. v. Alioto,
26F.3d 201 (1st Cir. 1994)....................8

United Elec., Radio & Machin. Workers v. 163 Pleasant St. Corp.,
960 F.2d 1080, (1st Cir. 1992)....................4

United States of America v. Swiss American Bank LTD, et al
274 F.3d 610 (1st Cir. 2001)....................9

Women & Infants Hospital v. Cmty Health Network of Conn. Inc.,
394 F.Supp 2d 488, (D.R.I. 2005).................... 4

Zippo Mfg. Co. v. Zippo Dot Com, Inc.,
952 F.Supp. 119 (W.D. Pa. 1997)....................9