UNITED STATES DISTRICT COURT
DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| RICHARD SOSTRE | : | |
| | : | |
| v. | : | C.A. No. 07-289ML |
| | : | |
| ANTHONY RYAN LESLIE, et al. | : | |

**REPORT AND RECOMMENDATION**

Lincoln D. Almond, United States Magistrate Judge

This matter is presently before the Court on a Motion to Dismiss (Document No. 14) (the "Motion") filed by Defendants The Mottola Company, Inc., Champion Entertainment Group, Inc., and Thomas Mottola (the "Mottola Defendants"). The Mottola Defendants seek dismissal pursuant to Fed. R. Civ. P. 12(b)(2) on the ground that this Court lacks personal jurisdiction over them. Plaintiff, Richard Sostre ("Plaintiff"), filed an Opposition to the Motion to Dismiss (the "Opposition"). (Document No. 16).

The Motion has been referred to me for preliminary review, findings and recommended disposition. See 28 U.S.C. § 636(b)(1)(B); LR Cv 72. A hearing was held on November 13, 2007. After reviewing the Motion and Opposition, in addition to performing independent research, this Court recommends that the Mottola Defendants' Motion to Dismiss for Lack of Personal Jurisdiction pursuant to Fed. R. Civ. P. 12(b)(2) (Document No. 14) be GRANTED.

**Background**

Plaintiff commenced this action by filing a four count Complaint in Rhode Island Superior Court on June 11, 2007. Plaintiff, a manager in the entertainment industry, alleges that Defendant Anthony Ryan Leslie, an artist, breached his contract with Plaintiff and failed to provide him with an accounting. Further, Plaintiff claims that all Defendants breached the implied covenant of good

faith and fair dealing to the management contract and that all Defendants tortiously interfered with Plaintiff's business relations. Defendants removed to this Court in a timely fashion on August 3, 2007. The Mottola Defendants contend that they do not have sufficient minimum contacts with this District to be subject to either general or specific personal jurisdiction in this Court and that the claims against them should be dismissed. Plaintiff filed an Opposition to the Motion, arguing that the Court may exercise both general and specific jurisdiction over the Mottola Defendants, and requesting, in the alternative, that he be given leave to conduct jurisdictional discovery.

**Facts**

Plaintiff, a Rhode Island resident, works as a manager in the music industry. Complaint, ¶¶ 2, 19. Leslie entered into a "Personal Management Agreement" with Plaintiff on September 1, 2000 (the "Agreement") which provided that Plaintiff would serve as Leslie's "sole and exclusive manager, representative and advisor, throughout the world, with respect to all Leslie's activities in the Entertainment Industry." Id. ¶¶ 20, 22. Plaintiff contends that the Mottola Defendants "knew or should have known" of the contract between Leslie and Plaintiff, but despite this knowledge, they served as managers for Leslie. Id. ¶¶ 45-48. Plaintiff alleges that the Mottola Defendants breached the implied covenant of good faith and fair dealing and tortiously interfered with Plaintiff's business relations. Id. ¶¶ 55, 56.

Thomas Mottola performs personal management services for recording artists. Affidavit of Thomas Mottola ("Mottola Aff.") Document No. 14, Ex. 3, ¶¶ 4, 5. He does not own property in Rhode Island, does not engage in business in Rhode Island and has not been to Rhode Island since before September 1, 2000. Id. ¶¶ 12, 13.

Thomas Mottola is also the sole owner of Defendants Mottola Company and Champion. Id. ¶ 3. Champion is a passive entity, with no employees, that owns and leases office space and equipment to Thomas Mottola and his companies. See Affidavit of Susan Steinsapir, ("Steinsapir Aff.") Document No. 14, Ex. 4, ¶¶ 12, 13. Mottola Company performs personal management services for recording artists. Mottola Aff. ¶¶ 4, 5. Mottola Company and Champion are New York corporations with their principle places of business located in New York City. Steinsapir Aff. ¶ 7, 12. Neither Mottola Company nor Champion have ever engaged in business activities in Rhode Island. Mottola Aff. ¶ 13; Steinsapir Aff. ¶¶ 4, 9, 14. They are not authorized to do business in Rhode Island and do not maintain an agent for service of process. Steinsapir Aff. ¶¶ 5, 10, 15. Further, they do not own any property in this District, or maintain a bank account, office, employee or telephone listing in Rhode Island and do not pay taxes in Rhode Island. Id., ¶¶ 5, 10, 15.

**Standard of Review**

It is well established that the burden rests with the plaintiff to make a prima facie showing to withstand a challenge to personal jurisdiction. Barrett v. Lombardi, 239 F.3d 23, 26 (1st Cir. 2001) (citing Rodriguez v. Fullerton Tires Corp., 115 F.3d 81, 83-84 (1st Cir. 1997)). See also, Daynard v. Ness, Motley, Loadholt, Richardson & Poole, P.A., 290 F.3d 42, 50 (1st Cir. 2002). In assessing the plaintiff's prima facie case, the Court must accept as true the "plaintiff's (properly documented) evidentiary proffers" and construe them "in light most congenial to plaintiff's jurisdictional claim." See Mass. Sch. of Law at Andover, Inc. v. Am. Bar Ass'n, 142 F.3d 26, 34, 51 (1st Cir. 1998). See also Trio Realty, Inc. v. Eldorado Homes, Inc., 350 F. Supp. 2d 322, 325 (D.P.R. 2004) (citing Ticketmaster-New York, Inc. v. Alioto, 26 F.3d 201, 203 (1st Cir. 1994)) (the court "draw[s] the facts from the pleadings and the parties' supplementary filings, including

affidavits, taking facts affirmatively alleged by plaintiff as true and construing disputed facts in the light most hospitable to plaintiff."). In setting forth the prima facie case, the plaintiff is required to bring to light credible evidence and "cannot rest upon mere averments, but must adduce competent evidence of specific facts." Barrett, 239 F.3d at 26 (citing Foster-Miller, Inc. v. Babcock & Wilcox Canada, 46 F.3d 138, 145 (1st Cir. 1995)).

The Mottola Defendants are subject to personal jurisdiction in this Court only if they have certain minimum contacts with the forum "such that maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" Int'l Shoe Co. v. Washington, 326 U.S. 310, 316 (1945) (citation omitted). Whether sufficient minimum contacts exist depends on the quality and nature of the activity of the Mottola Defendants, but it is essential that there be some act by which the Mottola Defendants purposefully availed themselves of the privilege of conducting activities within the forum state, thus invoking its benefits and protections. Sawtelle v. Farrell, 70 F.3d 1381, 1391 (1st Cir. 1995). The "purposeful availment" requirement "ensures that a defendant will not be haled into a jurisdiction solely as a result of 'random', 'fortuitous', or 'attenuated' contacts...." Burger King Corp. v. Rudzewicz, 471 U.S. 462, 475 (1984). In applying the minimum contacts analysis, the courts recognize two types of jurisdiction – general and specific. "General jurisdiction exists when the litigation is not directly founded on the defendant's forum-based contacts, but the defendant has nevertheless engaged in continuous and systematic activity, unrelated to the suit, in the forum state." United Elec. Workers v. 163 Pleasant St. Corp., 960 F.2d 1080, 1088 (1st Cir.1992)). Specific jurisdiction, on the other hand, exists "where plaintiff's claims 'arise out' of or are 'directly related' to defendant's contacts with the forum state...." Helicopteros Nacionales de Colombia, S.A. v. Hall, 466 U.S. 408, 414, n.8 (1984). However, "[f]or either type of

jurisdiction, in addition to the existence of sufficient 'minimum contacts,' the defendant's contacts with the state must be purposeful and the exercise of jurisdiction must be reasonable under the circumstances." Auburn Manufacturing v. Steiner Indus., 493 F. Supp. 2d 123, 127 (D. Me. 2007) (citing Harlow v. Children's Hosp., 432 F.3d 50, 57 (1st Cir. 2005)).

**A. Specific Jurisdiction**

The Court first considers whether it can exercise specific jurisdiction over the Mottola Defendants. In the analysis of specific jurisdiction, the court applies two general rules. First, the forum in which the Federal District Court sits must have a long-arm statute that grants jurisdiction over the defendant. See Barrett, 239 F.3d at 26. Second, "the plaintiff must...show sufficient minimum contacts such that 'the exercise of jurisdiction pursuant to that statute comports with the strictures of the Constitution.'" LaVallee v. Parrot-Ice Drink Prod. of Am., Inc., 193 F. Supp. 2d 296, 302 (quoting Pritzker v. Yari, 42 F.3d 53, 60 (1st Cir. 1994)). Rhode Island's long-arm statute, R.I. Gen. Laws § 9-5-33, authorizes a court to exercise jurisdiction over non-resident defendants to the fullest extent permitted by the United States Constitution. See Donatelli v. Nat'l Hockey League, 893 F.2d 459, 461 (1st Cir. 1990); see also Morel ex rel. Moorehead v. Estate of Davidson, 148 F. Supp. 2d 161 (D.R.I. 2001). Accordingly, the Court need only decide whether the assertion of personal jurisdiction over the Mottola Defendants comports with due process principles.

The First Circuit has developed a three-prong test for analyzing the due process considerations for the existence of specific personal jurisdiction:

> First, the claim underlying the litigation must directly arise out of, or relate to, the defendant's forum-state activities. Second, the defendant's in-state contacts must represent a purposeful availment of the privilege of conducting activities in the forum state, thereby invoking the benefits and protections of that state's laws and making the defendant's involuntary presence before the state's courts

> foreseeable. Third, the exercise of jurisdiction must, in light of the Gestalt factors, be reasonable.

United Elec. Radio and Mach. Workers of Am. v. 163 Pleasant St. Corp., 960 F.2d 1080, 1089 (1st Cir. 1992). In order for a court to exercise specific personal jurisdiction, all three factors – relatedness, purposefulness and reasonableness – must be satisfied.

**1. Relatedness**

The first prong of the due-process test is a consideration of relatedness. To meet the relatedness requirement of specific personal jurisdiction, "the claim underlying the litigation must directly arise out of, or relate to, the defendant's forum-state activities." United Elec. Radio, 960 F.2d at 1089. Relatedness is intended to be a "flexible, relaxed standard." Sawtelle, 70 F.3d at 1389 (citing Pritzker, 42 F.3d at 61). However, "a defendant need not be physically present in the forum state to cause injury (and thus 'activity' for jurisdictional purposes) in the forum state." Northern Laminate Sales, Inc. v. Davis, 403 F.3d 14, 25 (1st Cir. 2005).

Plaintiff's Complaint does not contain any allegations that link the Mottola Defendants to this District. The Mottola Defendants are not alleged to be parties to the Agreement and are not alleged to have conducted any activities in Rhode Island related to the subject matter of the Complaint. In short, Plaintiff has not pled any "forum-state activities" by the Mottola Defendants related to the Agreement. In his Opposition to the Motion to Dismiss, Plaintiff attempts to satisfy the relatedness requirement by noting that he is a Rhode Island resident, and that he "has suffered and continues to suffer significant economic injury and other harm due to [the Mottola] Defendants' intentional tortious conduct...[which] is clearly felt in Rhode Island." Document No. 16 at 5. Plaintiff argues that, "[n]umerous courts have upheld a court's exercise of personal jurisdiction over non-resident defendants with no direct contact with the forum when the intentional tort was

individually targeted at the resident of the forum state, and the brunt of the harm was felt there." Id. The "effects" test was set forth by the Supreme Court in Calder v. Jones, 465 U.S. 783, 789 (1984). In Calder, the Court found that there was personal jurisdiction over two employees of the National Enquirer magazine who lived and worked in Florida but wrote and edited a defamatory article about Shirley Jones, an entertainer, who lived in California. The Court noted that, "petitioners intended to, and did, cause tortious injury to respondent in California." Id. at 787. "California is the focal point both of the story and of the harm suffered....[petitioners'] intentional, and allegedly tortious, actions were expressly aimed at California." Id. at 789-790.

In this case, there are several reasons why the effects test does not carry the day. As a preliminary matter, the First Circuit Court of Appeals has noted that the effects test is not relevant to relatedness, and should only be considered in the context of the purposeful availment prong. See United States v. Swiss Am. Bank, 274 F. 3d 610, 623 (1st Cir. 2001); and Levin v. Harned, 304 F. Supp. 2d at 151 ("the Court is constrained by Swiss Am. Bank from even considering the effects of the tortious conduct until after the relatedness prong has been established....") Therefore, the Court rejects Plaintiff's argument that the effects test is relevant to the relatedness prong.

Moreover, even in the context of the purposeful availment prong, the effects test is narrowly construed and does not apply to the facts alleged in this case. The First Circuit Court of Appeals has stated that the effects test is "specifically designed for use in a defamation case..[and] whether [it] was ever intended to apply to numerous other torts, such as conversion or breach of contract, is unclear." Swiss Am. Bank, 274 F. 3d at 624. The Swiss American Bank Court also noted, for example, that in Calder, "the actual tort or injury, not just its consequences, occurred within the

forum." Id. at 624. The same is not true in this case. Plaintiff does not allege that the Mottola Defendants' wrongdoing occurred, he merely claims that the effects were felt here.

Additionally, in order to satisfy the effects test, the defendant must "purposefully and voluntarily...direct[ ] his activities toward the forum so that he should expect, by virtue of the benefit he receives, to be subject to the court's jurisdiction based on these contacts." Id. Here, Plaintiff has not alleged that the Mottola Defendants purposefully or voluntarily directed any claim-related activities toward this District. Thus, even in the context of the purposeful availment prong, the facts pled are insufficient to demonstrate that the Mottola Defendants "purposefully and voluntarily" directed activities toward Rhode Island related to the Agreement.

Aside from its reliance on the effects test, Plaintiff has not provided the Court with prima facie evidence sufficient to demonstrate that a cause of action arises out of the Mottola Defendants' contacts with Rhode Island. Having failed to satisfy the relatedness prong, the Court is not required to continue its jurisdictional analysis. See Hainey v. World AM Commc'ns, Inc., 263 F. Supp. 2d 338, 342 (D.R.I. 2003) (citing United Elec. Radio, 960 F.2d at 1091 n.11). However, the Court will briefly discuss the remaining two prongs of the specific jurisdiction analysis, since they also militate against the exercise of personal jurisdiction.

**2. Purposeful Availment**

The second prong of the due process test considers whether a defendant has "engaged in any purposeful activity related to the forum that would make the exercise of jurisdiction fair, just, or reasonable." Sawtelle, 70 F.3d at 1391 (quoting Rush v. Savchuk, 444 U.S. 320, 329 (1980)). Two factors are considered in the purposeful availment analysis: voluntariness and foreseeability. See Ticketmaster, 26 F.3d at 207. "To demonstrate purposeful availment, the plaintiff must proffer

'evidence that the defendant[s] actually reached out to the plaintiff's state of residence to *create* a relationship – say, by solicitation, – the mere fact that the defendant[s] willingly entered into a tendered relationship does not carry the day.'" PFIP, LLC v. Planet Fitness Enter., Inc., No. 04-250-JD, 2004 WL 2538489, at *7 (D.N.H. Nov. 10, 2004) (quoting Phillips Exeter Acad. v. Howard Phillips Fund, 196 F.3d 284, 292 (1st Cir. 1999)). The requirement "depends upon the extent to which the defendants voluntarily took action that made it foreseeable they might be required to defend themselves in court in [the forum state]." Id. (citing Jet Wine & Spirits, Inc. v. Bacardi & Co., 298 F.3d 1, 11 (1st Cir. 2002)).

The issue of foreseeability "ensures that a defendant will not be haled into a jurisdiction solely as a result of 'random,' 'fortuitous,' or 'attenuated' contacts, or of the 'unilateral activity of another party or a third person.'" Burger King, 471 U.S. at 475. Plaintiff's argument concerning the purposeful availment prong focuses on his contention that the Mottola Defendants "were aware or should have been aware"[1] of Leslie's Agreement with Plaintiff and that Plaintiff resides in Rhode Island and operates his business in this state. Despite this knowledge, Plaintiff contends that the Mottola Defendants served as Leslie's manager. Even considering these allegations in light of the deferential standard of review applicable to a jurisdictional claim, Plaintiff's evidence is insufficient, and his reasoning is unpersuasive. The theory that this Court can exercise jurisdiction over the Mottola Defendants because they knew of the Agreement is unpersuasive, and Plaintiff provides no support for the argument that the Mottola Defendants had a duty to inquire about the existence of an agreement. It is undisputed that the Mottola Defendants were not parties to the Agreement, and

---

[1] At the hearing on this Motion, Plaintiff's counsel broadened this argument by suggesting Defendants bore some duty of inquiry. She argued that, "if they didn't know, they should have known, and if they didn't – they should have asked."

it is not alleged that they engaged in any purposeful activity related to the Agreement in Rhode Island. Even if the Mottola Defendants actively pursued a management relationship with Leslie, there is simply insufficient evidence to link that activity to this forum.

Finally, in his Opposition, Plaintiff theorizes that the Mottola Defendants have "imputed knowledge" of Plaintiff's Rhode Island ties based on a series of alleged meetings and negotiations between Plaintiff, Leslie and Defendant Ed Woods. As best the Court can glean, Plaintiff claims that he and Leslie met with Woods in 2001, and that sometime after that meeting, Woods became an executive at Defendant Casablanca. Plaintiff asserts that Thomas Mottola owns Casablanca and that as such, the "knowledge and conduct of Defendant Ed Woods in interfering with the management agreement between Plaintiff and Defendant Leslie is imputed to the Mottola Defendants." See Document No. 16 at 6-7. The only matter before the Court on this Motion is whether this Court has personal jurisdiction over Thomas Mottola, The Mottola Company, Inc. and Champion Entertainment Group. Casablanca has answered Plaintiff's Complaint (Document No. 11) and is not a party to this Motion to Dismiss. Yet, even if this Court credited Plaintiff's allegations, there is still no basis upon which to exercise personal jurisdiction over the Mottola Defendants based upon a meeting or negotiation which allegedly took place between Plaintiff, Leslie and Woods. Thus, Plaintiff has not satisfied the purposeful availment prong of the test.

**3. Gestalt Factors**

The third prong of the test involves a determination of whether or not the Court's exercise of jurisdiction over Defendants is reasonable. United Elec. Radio, 960 F.2d at 1089. The Gestalt factors include the burden on defendants of appearing, the forum state's interest in litigating the dispute, the plaintiff's interest in convenient and effective relief, the judicial system's interest in

effective resolution and the state's common interest. A few of these factors weigh in favor of Plaintiff, as Plaintiff is a resident of this District and seeks a resolution from this Court. However, these factors do not outweigh the burden on the Mottola Defendants of appearing in a forum with which they do not have minimum contacts. Further, as noted above, Plaintiff has failed to meet his burden of providing evidence of either relatedness or purposeful availment. Thus, the Gestalt factors do not tip the balance in favor of this Court exercising jurisdiction over the Mottola Defendants.

Having considered all three prongs of the test for specific jurisdiction, the Court concludes that Plaintiff has not set forth evidence of minimum contacts, and that the Court does not have personal jurisdiction over the Mottola Defendants on the basis of their alleged contacts arising from the facts at issue in the Complaint.

**B. General Jurisdiction**

"It is well-established that the standard for finding general jurisdiction 'is considerably more stringent than that applied to specific jurisdiction questions.'" Negron-Torres v. Verizon Commc'n, Inc., 478 F.3d 19, 27 (1st Cir. 2007) (citation omitted). In order to find general jurisdiction, the Court considers a defendant's non-suit related contacts with a forum, and if those contacts are continuous and systematic, the Court may exercise general jurisdiction over the party. See Harlow v. Children's Hosp., 432 F.3d 50, 64 (1st Cir. 2005). The "continuous and systematic requirement has been characterized as being satisfied when the defendant's forum contacts are extensive and pervasive." Barry v. Mortgage Servicing Acquisition Corp., 909 F. Supp. 65, 75 (D.R.I. 1995) (citation omitted).

In this case, there is no evidence that the Mottola Defendants "maintained a continuous and systematic linkage with the forum state" as is required for the Court to find the exercise of general

jurisdiction to be proper. Northern Laminate, 403 F.3d at 24 (citing Phillips Exeter Acad., 196 F.3d at 288. As previously noted, Thomas Mottola is a New York resident, and has not visited Rhode Island in many years. Further, both Warner Music Group and Champion are corporations that maintain their principal places of business in New York and do not maintain an agent for service in this District nor do they have a mailing address, telephone number or other link to this District. In short, the Complaint fails to allege any of the traditional contacts that would support a finding of general jurisdiction.

Rather than pointing the Court to specific examples of the Mottola Defendants' contacts with this District, Plaintiff alleges that Thomas Mottola has sufficient contacts with Rhode Island because during the time period that he allegedly began to serve as Leslie's manager, he owned Defendant Casablanca Records and was "engaged in a joint venture with Defendant Universal Music Group." Document No. 16 at 10. Plaintiff claims that Casablanca and UMG "engaged and continue to engage in systematic and continuous business activity in Rhode Island...." Id. Plaintiff's Complaint and his Opposition are completely devoid of any evidence which links Thomas Mottola to this District, aside from these allegations that he owned Casablanca and engaged in a joint venture with UMG. The alleged in-forum activities of Casablanca and UMG are simply not relevant to a consideration of whether this Court has personal jurisdiction over Thomas Mottola. Even assuming Thomas Mottola did own Casablanca and was engaged in a joint venture with UMG, those facts are not a sufficient basis upon which to base a finding that the Court has general jurisdiction over him. See Negron-Torres, 478 F.3d at 27 ("[t]he mere fact that a subsidiary company does business within a state does not confer jurisdiction over its nonresident parent, even if the parent is the sole owner of the subsidiary.")

Further, Plaintiff asserts that there is general jurisdiction over the corporate Mottola Defendants "insofar as the income they derive as managers is directly tied to the revenue their artists generate...[in Rhode Island and elsewhere]" Document No. 16 at 10. This allegations falls far short of evidencing continuous and systematic activity in this District, and instead relies upon unproven assumptions and generalizations. The claim that this Court can exercise personal jurisdiction on this basis is rejected since it is not "competent evidence of specific facts" under the applicable review standard and because it fails to meet the "more stringent" requirement for general jurisdiction. In short, Plaintiff has not pointed to any evidence which links the Mottola Defendants to this District.

Plaintiff has failed to convince the Court that the Mottola Defendants have contacts with this forum that are a sufficient basis for the Court to exercise general jurisdiction. Accordingly, the Court finds that general jurisdiction is lacking.

**C. Jurisdictional Discovery**

Finally, in his Opposition to the Motion to Dismiss, Plaintiff requests an opportunity to conduct jurisdictional discovery "[i]n order to determine the amount of revenue generated by the Mottola Defendants from their business activities in the State of Rhode Island..." Document No. 16 at 10-11. A plaintiff who sues an out-of-state entity and who makes out a "colorable case" for the existence of personal jurisdiction may be entitled to conduct jurisdictional discovery if the defendant asserts a jurisdictional defense. Sunview Condo. Ass'n v. Flexel Int'l, Ltd., 116 F.3d 962, 964 (1st Cir. 1997). The District Court has broad discretion to determine whether or not such discovery is warranted. See, e.g., Nordica USA Corp. v. Sorensen, 475 F. Supp. 2d 128 (D.N.H. 2007). When a defendant challenges personal jurisdiction, the court may defer pretrial discovery if the record indicates that discovery is unnecessary (or "unlikely to be useful") in regard to establishing the

essential jurisdictional facts. Dynamic Image Tech., Inc. v. U.S., 221 F.3d 34, 39 (1st Cir. 2000). Here, Plaintiff claims the Mottola Defendants were aware, or should have been aware, of Plaintiff's Agreement with Leslie, but undertook management functions for Leslie despite this knowledge. As a result, Plaintiff claims he suffered economic injury in this District. The record contains Declarations from Thomas Mottola and from representatives of the companies that have been sued. Those Declarations, made under penalty of perjury, clearly illustrate the lack of contacts the Mottola Defendants have with this District.

Although Plaintiff argues that jurisdictional discovery may reveal a basis for personal jurisdiction, his argument is unconvincing. At the hearing, Plaintiff's counsel did not controvert, or attempt to controvert, any of the assertions in the declarations submitted on behalf of the Mottola Defendants. It is Plaintiff's obligation to present facts to the Court to show why jurisdiction would be found if jurisdictional discovery were permitted. Swiss Am. Bank, 274 F.3d at 626. Plaintiff has failed to do so here and has failed to proffer any facts to support a "colorable claim" of personal jurisdiction. Id. ("[F]ailure to allege specific contacts, relevant to establishing personal jurisdiction, in a jurisdictional discovery request can be fatal to that request."). Aside from his claim concerning the Mottola Defendants' Internet activities, there is no evidence of other traditional contacts that the Mottola Defendants have had with this forum. Therefore, Plaintiff's request for jurisdictional discovery is DENIED.

## Conclusion

For the reasons discussed above, this Court recommends that the Mottola Defendants' Motion to Dismiss for Lack of Personal Jurisdiction pursuant to Fed. R. Civ. P. 12(b)(2) (Document No. 14) be GRANTED.

Any objection to this Report and Recommendation must be specific and must be filed with the Clerk of the Court within ten (10) days of its receipt. See Fed. R. Civ. P. 72(b); LR Cv 72. Failure to file specific objections in a timely manner constitutes waiver of the right to review by the District Court and the right to appeal the District Court's decision. See United States v. Valencia-Copete, 792 F.2d 4, 6 (1st Cir. 1986); Park Motor Mart, Inc. v. Ford Motor Co., 616 F.2d 603, 605 (1st Cir. 1980).

/s/ Lincoln D. Almond
LINCOLN D. ALMOND
United States Magistrate Judge
January 4, 2008