UNITED STATES DISTRICT COURT
DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| RICHARD SOSTRE | : | |
| | : | |
| v. | : | C.A. No. 07-289ML |
| | : | |
| ANTHONY RYAN LESLIE, et al. | : | |

**REPORT AND RECOMMENDATION**

Lincoln D. Almond, United States Magistrate Judge

This matter is presently before the Court on a Motion to Dismiss (Document No. 13) (the "Motion") filed by Defendants Bad Boy Entertainment, Inc., Sean Combs, Warner Music Group Corp. and Gwen Niles (the "Bad Boy Defendants"). The Bad Boy Defendants seek dismissal pursuant to Fed. R. Civ. P. 12(b)(2) on the ground that this Court lacks personal jurisdiction over them. Plaintiff, Richard Sostre (the "Plaintiff"), filed an Opposition to the Motion to Dismiss (the "Opposition"). (Document No. 15).

The Motion has been referred to me for preliminary review, findings and recommended disposition. See 28 U.S.C. § 636(b)(1)(B); LR Cv 72. A hearing was held on November 13, 2007. After reviewing the Motion and Opposition, in addition to performing independent research, this Court recommends that the Bad Boy Defendants' Motion to Dismiss for Lack of Personal Jurisdiction pursuant to Fed. R. Civ. P. 12(b)(2) (Document No. 13) be GRANTED.

**Background**

Plaintiff commenced this action by filing a four count Complaint in Rhode Island Superior Court on June 11, 2007. Plaintiff, a manager in the entertainment industry, alleges that Defendant Anthony Ryan Leslie, an artist, breached his contract with Plaintiff and failed to provide him with an accounting. Further, Plaintiff claims that all Defendants breached the implied covenant of good

faith and fair dealing to the management contract and that all Defendants tortiously interfered with Plaintiff's business relations. Defendants removed to this Court in a timely fashion on August 3, 2007. The Bad Boy Defendants contend that they do not have sufficient minimum contacts with this District to be subject to either general or specific personal jurisdiction in this Court and that the claims against them should be dismissed. Plaintiff filed an Opposition to the Motion, arguing that the Court may exercise both general and specific jurisdiction over the Bad Boy Defendants, and requesting, in the alternative, that he be given leave to conduct jurisdictional discovery.

**Facts**

Plaintiff, a Rhode Island resident, works as a manager in the music industry. Complaint, ¶¶ 1, 19. Leslie entered into a "Personal Management Agreement" with Plaintiff on September 1, 2000 (the "Agreement") which provided that Plaintiff would serve as Leslie's "sole and exclusive manager, representative and advisor, throughout the world, with respect to all Leslie's activities in the Entertainment Industry." Id. ¶¶ 20, 22. Plaintiff contends that the Bad Boy Defendants "knew or should have known" of the contract between Leslie and Plaintiff, but despite this knowledge, they served as managers for Leslie. Id. ¶¶ 45-48. Plaintiff alleges that the Bad Boy Defendants breached the implied covenant of good faith and fair dealing and tortiously interfered with Plaintiff's business relations. Id. ¶¶ 55, 56.

Warner Music Group is licensed to do business in the State of New York and maintains its principal place of business in New York City. Declaration of Paul M. Robinson ("Robinson Decl."), Document No. 13, Ex. A, ¶¶ 4-5. It is a Delaware corporation which does not conduct business in Rhode Island, and does not maintain offices or have authorized representatives in this state.

Robinson Decl. ¶¶ 3, 6. Further, Warner Music Group does not pay any taxes in Rhode Island nor does it have a telephone listing or mailing address. Id., ¶ 7.

Bad Boy Entertainment is a holding company of stock, partnership and trust interests. It does not conduct any business in Rhode Island and does not maintain offices, authorized representatives, telephone listings or mailing addresses. Declaration of Sean Combs ("Combs Decl."), Document No. 13, Ex. A. ¶¶ 7, 10, 12.

Gwen Niles and Sean Combs are residents of the State of New York, pay taxes and are registered to vote in New York. Neither Niles nor Combs has visited Rhode Island in the past ten years. Combs Decl. ¶¶ 9-10, 12; Declaration of Gwen Niles ("Niles Decl."), Document No. 13, Ex. A., ¶¶ 8-9, 10.

**Standard of Review**

It is well established that the burden rests with the plaintiff to make a prima facie showing to withstand a challenge to personal jurisdiction. Barrett v. Lombardi, 239 F.3d 23, 26 (1st Cir. 2001) (citing Rodriguez v. Fullerton Tires Corp., 115 F.3d 81, 83-84 (1st Cir. 1997)). See also, Daynard v. Ness, Motley, Loadholt, Richardson & Poole, P.A., 290 F.3d 42, 50 (1st Cir. 2002). In assessing the plaintiff's prima facie case, the Court must accept as true the "plaintiff's (properly documented) evidentiary proffers" and construe them "in light most congenial to plaintiff's jurisdictional claim." See Mass. Sch. of Law at Andover, Inc. v. Am. Bar Ass'n, 142 F.3d 26, 34, 51 (1st Cir. 1998). See also Trio Realty, Inc. v. Eldorado Homes, Inc., 350 F. Supp. 2d 322, 325 (D.P.R. 2004) (citing Ticketmaster-New York, Inc. v. Alioto, 26 F.3d 201, 203 (1st Cir. 1994)) (the court "draw[s] the facts from the pleadings and the parties' supplementary filings, including affidavits, taking facts affirmatively alleged by plaintiff as true and construing disputed facts in the

light most hospitable to plaintiff."). In setting forth the prima facie case, the plaintiff is required to bring to light credible evidence and "cannot rest upon mere averments, but must adduce competent evidence of specific facts." Barrett, 239 F.3d at 26 (citing Foster-Miller, Inc. v. Babcock & Wilcox Canada, 46 F.3d 138, 145 (1st Cir. 1995)).

The Bad Boy Defendants are subject to personal jurisdiction in this Court only if they have certain minimum contacts with the forum "such that maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" Int'l Shoe Co. v. Washington, 326 U.S. 310, 316 (1945) (citation omitted). Whether sufficient minimum contacts exist depends on the quality and nature of the activity of the Bad Boy Defendants, but it is essential that there be some act by which the Bad Boy Defendants purposefully availed themselves of the privilege of conducting activities within the forum state, thus invoking its benefits and protections. Sawtelle v. Farrell, 70 F.3d 1381, 1391 (1st Cir. 1995). The "purposeful availment" requirement "ensures that a defendant will not be haled into a jurisdiction solely as a result of 'random', 'fortuitous', or 'attenuated' contacts...." Burger King Corp. v. Rudzewicz, 471 U.S. 462, 475 (1984). In applying the minimum contacts analysis, the courts recognize two types of jurisdiction – general and specific. "General jurisdiction exists when the litigation is not directly founded on the defendant's forum-based contacts, but the defendant has nevertheless engaged in continuous and systematic activity, unrelated to the suit, in the forum state." United Elec. Workers v. 163 Pleasant St. Corp., 960 F.2d 1080, 1088 (1st Cir.1992)). Specific jurisdiction, on the other hand, exists "where plaintiff's claims 'arise out' of or are 'directly related' to defendant's contacts with the forum state...." Helicopteros Nacionales de Colombia, S.A. v. Hall, 466 U.S. 408, 414, n.8 (1984). However, "[f]or either type of jurisdiction, in addition to the existence of sufficient 'minimum contacts,' the defendant's contacts

with the state must be purposeful and the exercise of jurisdiction must be reasonable under the circumstances." Auburn Manufacturing v. Steiner Indus., 493 F. Supp. 2d 123, 127 (D. Me. 2007) (citing Harlow v. Children's Hosp., 432 F.3d 50, 57 (1st Cir. 2005)).

**A. Specific Jurisdiction**

The Court first considers whether it can exercise specific jurisdiction over the Bad Boy Defendants. In the analysis of specific jurisdiction, the court applies two general rules. First, the forum in which the Federal District Court sits must have a long-arm statute that grants jurisdiction over the defendant. See Barrett, 239 F.3d at 26. Second, "the plaintiff must...show sufficient minimum contacts such that 'the exercise of jurisdiction pursuant to that statute comports with the strictures of the Constitution.'" LaVallee v. Parrot-Ice Drink Prod. of Am., Inc., 193 F. Supp. 2d 296, 302 (quoting Pritzker v. Yari, 42 F.3d 53, 60 (1st Cir. 1994)). Rhode Island's long-arm statute, R.I. Gen. Laws § 9-5-33, authorizes a court to exercise jurisdiction over non-resident defendants to the fullest extent permitted by the United States Constitution. See Donatelli v. Nat'l Hockey League, 893 F.2d 459, 461 (1st Cir. 1990); see also Morel ex rel. Moorehead v. Estate of Davidson, 148 F. Supp. 2d 161 (D.R.I. 2001). Accordingly, the Court need only decide whether the assertion of personal jurisdiction over the Bad Boy Defendants comports with due process principles.

The First Circuit has developed a three-prong test for analyzing the due process considerations for the existence of specific personal jurisdiction:

> First, the claim underlying the litigation must directly arise out of, or relate to, the defendant's forum-state activities. Second, the defendant's in-state contacts must represent a purposeful availment of the privilege of conducting activities in the forum state, thereby invoking the benefits and protections of that state's laws and making the defendant's involuntary presence before the state's courts foreseeable. Third, the exercise of jurisdiction must, in light of the Gestalt factors, be reasonable.

United Elec. Radio and Mach. Workers of Am. v. 163 Pleasant St. Corp., 960 F.2d 1080, 1089 (1st Cir. 1992). In order for a court to exercise specific personal jurisdiction, all three factors – relatedness, purposefulness and reasonableness – must be satisfied.

**1. Relatedness**

The first prong of the due-process test is a consideration of relatedness. To meet the relatedness requirement of specific personal jurisdiction, "the claim underlying the litigation must directly arise out of, or relate to, the defendant's forum-state activities." United Elec. Radio, 960 F.2d at 1089. Relatedness is intended to be a "flexible, relaxed standard." Sawtelle, 70 F.3d at 1389 (citing Pritzker, 42 F.3d at 61). However, "a defendant need not be physically present in the forum state to cause injury (and thus 'activity' for jurisdictional purposes) in the forum state." Northern Laminate Sales, Inc. v. Davis, 403 F.3d 14, 25 (1st Cir. 2005).

Plaintiff's Complaint does not contain any allegations that link the Bad Boy Defendants to this District. The Bad Boy Defendants are not alleged to be parties to the Agreement and are not alleged to have conducted any activities in Rhode Island related to the subject matter of the Complaint. In short, Plaintiff has not pled any "forum-state activities" by the Bad Boy Defendants related to the Agreement. In his Opposition to the Motion to Dismiss, Plaintiff attempts to satisfy the relatedness requirement by noting that he is a Rhode Island resident, and that he "has suffered and continues to suffer significant economic injury and other harm due to the Bad Boy Defendants' intentional tortious conduct...[which] is clearly felt in Rhode Island." Document No. 15 at 5. Plaintiff goes on to argue that, "[n]umerous courts have upheld a court's exercise of personal jurisdiction over non-resident defendants with no direct contact with the forum when the intentional tort was individually targeted at the resident of the forum state, and the harm was felt there." Id.

The "effects" test was set forth by the Supreme Court in Calder v. Jones, 465 U.S. 783, 789 (1984). In Calder, the Court found that there was personal jurisdiction over two employees of the National Enquirer magazine who lived and worked in Florida but wrote and edited a defamatory article about Shirley Jones, an entertainer, who lived in California. The Court noted that, "petitioners intended to, and did, cause tortious injury to respondent in California." Id. at 787. "California is the focal point both of the story and of the harm suffered....[petitioners'] intentional, and allegedly tortious, actions were expressly aimed at California." Id. at 789-790.

In this case, there are several reasons why the effects test does not carry the day. As a preliminary matter, the First Circuit Court of Appeals has noted that the effects test is not relevant to relatedness, and should only be considered in the context of the purposeful availment prong. See United States v. Swiss Am. Bank, 274 F. 3d 610, 623 (1st Cir. 2001); and Levin v. Harned, 304 F. Supp. 2d at 151 ("the Court is constrained by Swiss Am. Bank from even considering the effects of the tortious conduct until after the relatedness prong has been established....") Therefore, the Court rejects Plaintiff's argument that the effects test is relevant to the relatedness prong.

Moreover, even in the context of the purposeful availment prong, the effects test is narrowly construed and does not apply to the facts alleged in this case. The First Circuit Court of Appeals has stated that the effects test is "specifically designed for use in a defamation case..[and] whether [it] was ever intended to apply to numerous other torts, such as conversion or breach of contract, is unclear." Swiss Am. Bank, 274 F. 3d at 624. The Swiss American Bank Court also noted, for example, that in Calder, "the actual tort or injury, not just its consequences, occurred within the forum." Id. at 624. The same is not true in this case. Plaintiff does not allege that the Bad Boy Defendants' wrongdoing occurred in this District.

Additionally, in order to satisfy the effects test, the defendant must "purposefully and voluntarily...direct[ ] his activities toward the forum so that he should expect, by virtue of the benefit he receives, to be subject to the court's jurisdiction based on these contacts." Id. Here, Plaintiff has not alleged that the Bad Boy Defendants purposefully or voluntarily directed any claim-related activities toward this District. Thus, even in the context of the purposeful availment prong, the facts pled are insufficient to demonstrate that the Bad Boy Defendants "purposefully and voluntarily" directed activities toward Rhode Island in the context of the Agreement.

Aside from its reliance on the effects test, Plaintiff has not provided the Court with prima facie evidence sufficient to demonstrate that a cause of action arises out of the Bad Boy Defendants' contacts with Rhode Island. Having failed to satisfy the relatedness prong, the Court is not required to continue its jurisdictional analysis. See Hainey v. World AM Communications, Inc., 263 F. Supp. 2d 338, 342 (D.R.I. 2003) citing United Elec. Radio, 960 F.2d at 1091 n.11. However, the Court will briefly discuss the remaining two prongs of the specific jurisdiction analysis, since they also militate against the exercise of personal jurisdiction.

**2. Purposeful Availment**

The second prong of the due process test considers whether a defendant has "engaged in any purposeful activity related to the forum that would make the exercise of jurisdiction fair, just, or reasonable." Sawtelle, 70 F.3d at 1391 (quoting Rush v. Savchuk, 444 U.S. 320, 329 (1980)). Two factors are considered in the purposeful availment analysis: voluntariness and foreseeability. See Ticketmaster, 26 F.3d at 207. "To demonstrate purposeful availment, the plaintiff must proffer 'evidence that the defendant[s] actually reached out to the plaintiff's state of residence to *create* a relationship – say, by solicitation, – the mere fact that the defendant[s] willingly entered into a

tendered relationship does not carry the day.'" PFIP, LLC v. Planet Fitness Enter., Inc., No. 04-250-JD, 2004 WL 2538489, at *7 (D.N.H. Nov. 10, 2004) (quoting Phillips Exeter Acad. v. Howard Phillips Fund, 196 F.3d 284, 292 (1st Cir. 1999)). The requirement "depends upon the extent to which the defendants voluntarily took action that made it foreseeable they might be required to defend themselves in court in [the forum state]." Id. (citing Jet Wine & Spirits, Inc. v. Bacardi & Co., 298 F.3d 1, 11 (1st Cir. 2002)).

The issue of foreseeability "ensures that a defendant will not be haled into a jurisdiction solely as a result of 'random,' 'fortuitous,' or 'attenuated' contacts, or of the 'unilateral activity of another party or a third person.'" Burger King, 471 U.S. at 475. Plaintiff's argument concerning the purposeful availment prong focuses on his contention that the Bad Boy Defendants "were aware or should have been aware" of Leslie's Agreement with Plaintiff and that Plaintiff resides in Rhode Island and operates his business in this state. Despite this knowledge, Plaintiff contends that the Bad Boy Defendants served as Leslie's manager. Even considering this claim in light of the deferential standard of review applicable to a jurisdictional claim, Plaintiff's allegations are insufficient to satisfy the purposeful availment prong. It is undisputed that the Bad Boy Defendants were not parties to the Agreement, and it is not alleged that they engaged in any purposeful activity related to the Agreement in Rhode Island. Even if the Bad Boy Defendants actively pursued a management relationship with Leslie, there is simply insufficient evidence to link that activity to this forum. Thus, Plaintiff has not satisfied the purposeful availment prong of the test.

**3. Gestalt Factors**

The third prong of the test involves a determination of whether or not the Court's exercise of jurisdiction over Defendant is reasonable. United Elec. Radio, 960 F.2d at 1089. The Gestalt

factors include the burden on Defendants of appearing, the forum state's interest in litigating the dispute, the plaintiff's interest in convenient and effective relief, the judicial system's interest in effective resolution and the state's common interest. Several of these factors weigh in favor of Plaintiff, as Plaintiff is a resident of this District and seeks a resolution from this Court. However, these factors do not outweigh the burden on the Bad Boy Defendants of appearing in a forum with which they do not have minimum contacts. Further, as noted above, Plaintiff has failed to meet his burden of providing evidence of either relatedness or purposeful availment. Thus, the Gestalt factors do not tip the balance in favor of this Court exercising jurisdiction over the Bad Boy Defendants.

Having considered all three prongs of the test for specific jurisdiction, the Court concludes that Plaintiff has not set forth evidence of minimum contacts, and that the Court does not have personal jurisdiction over the Bad Boy Defendants on the basis of their alleged contacts arising from the facts at issue in the Complaint.

**B. General Jurisdiction**

"It is well-established that the standard for finding general jurisdiction 'is considerably more stringent than that applied to specific jurisdiction questions.'" Negron-Torres v. Verizon Commc'ns, Inc., 478 F.3d 19, 27 (1st Cir. 2007) (citation omitted). In order to find general jurisdiction, the Court considers a defendant's non-suit related contacts with a forum, and if those contacts are continuous and systematic, the Court may exercise general jurisdiction over the party. See Harlow v. Children's Hosp., 432 F.3d 50, 64 (1st Cir. 2005). The "continuous and systematic requirement has been characterized as being satisfied when the defendant's forum contacts are extensive and pervasive." Barry v. Mortgage Servicing Acquisition Corp., 909 F. Supp. 65, 75 (D.R.I. 1995) (citation omitted).

In this case, there is no evidence that the Bad Boy Defendants "maintained a continuous and systematic linkage with the forum state" as is required for the Court to find the exercise of general jurisdiction to be proper. Northern Laminate, 403 F.3d at 24, citing Phillips Exeter Acad., 196 F.3d at 288. As previously noted, the individual Bad Boy Defendants are New York residents and have not visited Rhode Island in at least ten years. The corporate Bad Boy Defendants maintain their principal places of business in New York and do not maintain an agent for service in this District nor do they have a mailing address, telephone number or other link to this District. In short, the Complaint fails to allege any of the traditional contacts that would support a finding of general jurisdiction.

Rather than pointing the Court to specific examples of the Bad Boy Defendants' contacts with this District, Plaintiff alleges that the Bad Boy Defendants have sufficient contacts with Rhode Island through the internet. Plaintiff argues that "the Bad Boy Defendants maintain commercial websites to sell their products to the Rhode Island market." Document No. 15 at 11. As support for this claim, however, Plaintiff points only to one exhibit, a printed page from the website http://mobile.badboyonline.com. Plaintiff provides no evidence that the website is owned or operated by the Defendant in this action, Bad Boy Entertainment. This computer printout shows, generally, that music is for sale on the Internet, but does not tie the website to any of the Defendants named in this action.

In addition to failing to provide this Court with adequate support for his general jurisdiction claim, Plaintiff mistakenly argues that this Court should apply the framework set forth in Zippo Mfg. Co. v. Zippo Dot Com, Inc., 952 F. Supp. 1119, 1124 (W.D. Pa. 1997), to the question of whether general jurisdiction can be exercised over the Bad Boy Defendants. While the Zippo case

does set forth a framework for analyzing personal jurisdiction issues where the contacts are based on the Internet, the Zippo framework was crafted in the context of a dispute over specific jurisdiction. In Zippo, the plaintiff did not contend that general jurisdiction existed, thus the court did not even analyze the defendant's Internet contacts in the context of general jurisdiction. Id. at 1122.

Because the standard for finding general jurisdiction is more stringent than that for specific jurisdiction, this Court declines to apply the Zippo framework. Moreover, the Court rejects Plaintiff's contention that the Court can exercise general jurisdiction over the Bad Boy Defendants because the Bad Boy Defendants maintain commercial websites to sell products to this market. In this Court's view, even if the Bad Boy Defendants maintain websites which sell products in every state, including Rhode Island, "[g]iven that individuals can access an Internet website from any forum, an exercise of general jurisdiction based solely on an interactive website would subject many companies and individuals to suit in essentially any court, which is untenable." Mullaly v. Jones, No. 2:05-CV-00154, 2007 WL 674294, *5 (D. Nev. February 28, 2007). Instead, "[t]here must be evidence to show that the website was systematically and continuously aimed at the forum such that an exercise of jurisdiction would comport with 'traditional notions of fair play and substantial justice.'" Id. See also Bird v. Parsons, 289 F.3d 865, 874 (6th Cir. 2002) (maintenance of "a website that is accessible to anyone over the Internet is insufficient to justify general jurisdiction" even if the website enables defendant to do business with residents of the forum); GTE New Media Services Inc. v. BellSouth Corp.,199 F.3d 1343, 1350 (D.C. Cir. 2000) ("[w]e do not believe that the advent of advanced technology, say, as with the Internet, should vitiate long-held and inviolate principles of federal court jurisdiction. The Due Process Clause exists, in part, to give 'a degree of

predictability to the legal system that allows potential defendants to structure their primary conduct with some minimum assurance as to where that conduct will and will not render them liable to suit.'") (internal citation omitted).

Plaintiff has failed to convince the Court that the maintenance of a commercial website is a sufficient basis for the Court to exercise general jurisdiction over Defendants with no other contacts with this District. Accordingly, the Court finds that general jurisdiction is lacking.

**C. Jurisdictional Discovery**

Finally, in his Opposition to the Motion to Dismiss, Plaintiff requests an opportunity to conduct jurisdictional discovery "[i]n order to ascertain the amount of revenue generated by the Bad Boy Defendants and the amount of sales conducted in Rhode Island...." Document No. 15 at 11.

A plaintiff who sues an out-of-state entity and who makes out a "colorable case" for the existence of personal jurisdiction may be entitled to conduct jurisdictional discovery if the defendant asserts a jurisdictional defense. Sunview Condo. Ass'n v. Flexel Int'l, Ltd., 116 F.3d 962, 964 (1st Cir. 1997). The District Court has broad discretion to determine whether or not such discovery is warranted. See, e.g., Nordica USA Corp. v. Sorensen, 475 F. Supp. 2d 128 (D.N.H. 2007). When a defendant challenges personal jurisdiction, the court may defer pretrial discovery if the record indicates that discovery is unnecessary (or "unlikely to be useful") in regard to establishing the essential jurisdictional facts. Dynamic Image Tech., Inc. v. U.S., 221 F.3d 34, 39 (1st Cir. 2000). Here, Plaintiff claims the Bad Boy Defendants were aware, or should have been aware, of Plaintiff's Agreement with Leslie, but undertook management functions for Leslie despite this knowledge. As a result, Plaintiff claims he suffered economic injury in this District. The record contains Declarations from the individual Bad Boy Defendants and from representatives of the companies

sued. Those Declarations, made under penalty of perjury, clearly illustrate the lack of contacts the Bad Boy Defendants have with this District.

Although Plaintiff argues that jurisdictional discovery may reveal a basis for personal jurisdiction, his argument is unconvincing. At the hearing, Plaintiff's counsel did not controvert, or attempt to controvert, any of the assertions in the declarations submitted on behalf of the Bad Boy Defendants. It is Plaintiff's obligation to present facts to the Court to show why jurisdiction would be found if jurisdictional discovery were permitted. Swiss Am. Bank, 274 F.3d at 626. Plaintiff has failed to do so here and has failed to proffer any facts to support a "colorable claim" of personal jurisdiction. Id. ("[F]ailure to allege specific contacts, relevant to establishing personal jurisdiction, in a jurisdictional discovery request can be fatal to that request."). Aside from his claim concerning the Bad Boy Defendants' internet activities, there is no evidence of other traditional contacts that the Bad Boy Defendants have had with this forum. Therefore, Plaintiff's request for jurisdictional discovery is DENIED.

**Conclusion**

For the reasons discussed above, this Court recommends that the Bad Boy Defendants' Motion to Dismiss for Lack of Personal Jurisdiction pursuant to Fed. R. Civ. P. 12(b)(2) (Document No. 13) be GRANTED.

Any objection to this Report and Recommendation must be specific and must be filed with the Clerk of the Court within ten (10) days of its receipt. See Fed. R. Civ. P. 72(b); LR Cv 72. Failure to file specific objections in a timely manner constitutes waiver of the right to review by the District Court and the right to appeal the District Court's decision. See United States v. Valencia-

Copete, 792 F.2d 4, 6 (1st Cir. 1986); Park Motor Mart, Inc. v. Ford Motor Co., 616 F.2d 603, 605 (1st Cir. 1980).

/s/ Lincoln D. Almond
LINCOLN D. ALMOND
United States Magistrate Judge
January 4, 2008